(33 South. 188.)

No. 13,908.

DE ARMAS v. BELL, City Engineer, et al.

(Dec. 15, 1902.)

CITY ENGINEER—SUSPENSION OF DEPUTY—ACTION FOR DAMAGES.

1. Assumption of authority by an officer to suspend another officer will not furnish ground for an action in damages, when in good faith, and in pursuance of a precedent established on a previous occasion in the interest of, and at the instance of, such suspended officer, to save him on such previous occasion from injurious publicity.

2. The applicability of the doctrine of respondeat superior depends in large measure upon the extent to which the appointment and removal of the subordinate is under the control of the superior.

(Syllabus by the Court.)

Appeal from civil district court, parish of Orleans; Thomas C. W. Ellis, Judge.

Action by George De Armas against A. C. Bell, city engineer, and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Charles Louque, for appellant. McCloskey & Benedict (Robert H. Marr, of counsel), for appellee Bell. James B. Rosser, Jr., for appellee sureties.

PROVOSTY, J. The plaintiff alleges that on the 27th day of April, 1886, he was elected by the city council of the city of New Orleans one of the deputy city engineers of the said city, and that he qualified as such by giving bond in the sum of $5,000.

That the defendant A. C. Bell was at the same time elected by the same council city engineer, and gave bond in the sum of $5,000, with R. J. Whann and H. H. Taylor as his sureties.

That the petitioner's office was not inferior in rank to that of the city engineer, but was created solely for the benefit of the citizens who were obliged to employ a civil engineer for private work. That the duties of the city engineer were solely for the benefit of the city of New Orleans and public works.

"That during the month of June, 1899, your petitioner issued a grade certificate to Ant. Schwartz, corner of Broad and Orchard streets.

"That the said grades were perfectly correct, but that A. C. Bell, the city engineer, undertook to declare said certificate incorrect, and stopped the said Schwartz from continuing his building; thus doing great injury to your petitioner, as an engineer. That not satisfied with his action, said Bell proceeded on the 11th of July, 1899, to suspend your petitioner for a period of 90 days."

That previously, on the 25th of May, 1897, the petitioner had been suspended by Bell for a period of 60 days, and on another occasion for 60 days.

That the said acts of said Bell were committed maliciously for the sole purpose of injuring the petitioner.

That although said Bell had no legal right

to suspend the petitioner, yet as city engineer he exercised the power and refused to recognize the work done by the petitioner, and practically carried out the suspension.

That even if the office of the petitioner had been under the control of the city engineer, all he could have done would have been to suspend the petitioner for 30 days, and report his case to the city council for trial.

That said Bell did not at any time make a report of the petitioner's suspension, and prefer charges against him.

That said Bell maliciously suspended the petitioner, and was guilty of oppression in office, all with the view of injuring the petitioner's reputation as a surveyor, and with the intention of forcing the private business in the hands of the employers of his office, and that said Bell has been guilty of favoritism in addition to oppression and usurpation of power.

The prayer is for damages as follows: Actual damages in the sum of $500 for work lost during the suspensions; $5,000 for the slanders thrown upon the petitioner's work by said Bell officially, and in publishing him to the world as incompetent, thereby injuring his means of gaining a livelihood; $5,000, vindictive damages for the acts of malice, oppression, and favoritism.

An exception to the vagueness of the petition having been sustained, and the petitioner required to make his allegations more specific, he filed a supplemental petition, alleging as follows:

That the second suspension took place in November, 1898, or thereabout, and was made verbally, and no record was made of same.

That the work lost as a result of the suspensions was grade certificates and other engineering work, such as surveys of lots, which would have been given him by his clients who had to employ other surveyors.

That among other parties who were the petitioner's customers for many years, and who had no complaint to make of the petitioner, were the following: (Naming 10 persons and friends.) That said parties, from June, 1899, to January, 1900, obtained not less than 35 certificates of grades for buildings.

That the slanderous words used were that the petitioner was incapable of doing work

correctly and was negligent, and that both the defendant and the employés of his office, with his approval, and especially S. L. James, counseled and advised the builders and contractors not to employ the petitioner as a deputy surveyor.

That the said Bell encouraged and assisted the employés of his office in finding fault with the petitioner's work, even when correct, and to violate the law by taking charge of private surveys indirectly, and sending the said parties to favored deputy surveyors.

That the clients of the petitioner had to employ other surveyors designated by the office to do the work thus taken away from the petitioner, all with the direct knowledge and connivance and consent of the defendant.

That the defendant gave orders to his chief clerk not to accept and recognize work done by the petitioner.

That especially such was the case on July 7, 1899, when said Bell refused to recognize petitioner's work as deputy surveyor done for Mr. Henry Bentz, and compelled Mr. Bentz to employ another surveyor.

That said Bell declared that petitioner was incapable to do work, and was not entitled to pay.

The said conduct was injurious to the petitioner, and tended to deprive him of his means of earning a living; the petitioner having no other means of earning his living.

Even this supplemental petition, designed as it was to make the plaintiff's grounds of complaint specific, is so vague that, in order to know exactly what are the acts of Bell of which plaintiff complains, the court has to resort to the brief submitted in support of the appeal.

We find that three points are there made, sufficiently tangible for the court to deal with them. These are: First, that the defendant was without authority to suspend the petitioner; second, that, even if he had such authority, his exercise of it, based on the certificate issued to Schwartz, was unjustified, there having been nothing defective in the work done for Schwartz; third, that James, the permit clerk of the defendant's office, gave to one of the clients of plaintiff some typewritten postal cards, ready addressed, and needing but to be filled out, informing him (James) of the place where a survey was needed, and that this reprehensible conduct of

James was brought to the attention of the defendant, and that defendant took no serious notice of the matter.

The question of whether the defendant had or not authority to suspend the plaintiff need not, we think, be considered. When the matter of the first suspension was pending, the defendant doubted his authority in the premises, and was for referring the matter to the city council, and it was at the instance of plaintiff that he abstained from doing so, and assumed the authority. In assuming authority for the second suspension, he but followed a precedent set at the instance of the plaintiff himself in the first. Granting that he erred, plaintiff is not in a position to make the error the basis for a claim in damages. It was an honest error, to the bringing about of which plaintiff contributed. Whether it was error at all, need not, we say, be considered. The inference would be, however, that it was not, since the action was based upon the advice of the city attorney, who doubtless did not give an opinion without having first carefully considered the question.

On the subject of these postal cards, and on the entire subject of the grievances of plaintiff against the office of the city surveyor, the evidence is exceedingly scant and vague and unsatisfactory. We much suspect that the plaintiff was persona non grata in that office, and that such opportunities as presented themselves for making him feel his unpopularity were not left unimproved; but the evidence does not show a single act or word of the defendant in his conduct towards plaintiff that was not dictated, apparently, at least, by a sense of official duty; and it does show that consistently throughout he kept from publicity the complaints made against plaintiff, and that in one notable instance he went out of his way to save plaintiff from injurious publicity.

It shows furthermore that, in response to the complaint made by plaintiff against James, defendant set a watch upon James, and, further, that at plaintiff's instance the complaint against James was investigated by the city council, and found to be groundless.

The record does not enable the court to ascertain whether the permit clerk, James, was under the control of the defendant respecting appointment and removal. Upon this control the liability of defendant for the acts of James would very largely depend; the doctrine of respondeat superior being applicable, or not, accordingly as this control was complete. Dill. Mun. Corp. § 238, note. Nor does the record show that James sent or gave out any more postal cards after his irregular practice had been called to the attention of defendant. Nor that James used the cards to any greater extent among the clients of plaintiff than among the clients of the other deputy surveyors, in such way that there should have been anything special to plaintiff in the matter. Nor that plaintiff suffered any actual loss from the practice; it appearing that, in the one instance in which the cards are shown to have been given out, they were so given after the client in question had made the declaration, "I had too much trouble with De Armas with my permits."

In making a survey for the purpose of establishing the grade of a lot, the proper mode of proceeding is to start from some street of established grade, or from some bench mark in the neighborhood. Plaintiff did not do this in his work for Schwartz, but adopted as his starting point a nail stuck in the fence of the adjoining lot of Boze, which nail he had been told had been set there by authority of the city engineer's office to show the grade.

The starting point proved to be too low, and, as a consequence, plaintiff's work also proved to be too low, and in that respect defective. It was a venial fault, and, had the suspension been based on it alone, there would have been some reason for suspecting Bell of having been on the watch for an opportunity to suspend plaintiff; but the evidence shows that this was but one of a number of instances wherein plaintiff's work had given ground for complaint, and that the suspension was based as much on the other instances in general as on this one in particular.

Plaintiff asserts that his work was subjected to much closer scrutiny than was that of the other surveyors, and he attributes to the ill will of defendant this watchfulness over his work. The testimony fails to show any ill will on the part of defendant. It

shows affirmatively that not in a single instance was plaintiff's work subjected to investigation except upon complaint duly made.

Plaintiff would have the court believe that the complaints were trumped up against him, but the evidence shows differently.

Plaintiff was suspended not three times, as alleged, but only twice.

The impression we have from the case as a whole is that, in his conduct towards plaintiff, the defendant Bell was actuated throughout by the sole motive of doing what he considered his official duty.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed.